In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-01039-CR
 

 
 
DANIEL WEBSTER JOHNSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee




On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1058127


 

MEMORANDUM OPINION
          A jury found appellant, Daniel Webster Johnson, guilty of possession of four
to twenty grams of cocaine with the intent to deliver, and the trial court assessed
punishment at 35 years in prison. Tex. Health & Safety Code Ann. § 481.112
(Vernon 2001); Tex. Penal Code Ann. § 12.32 (Vernon 2003). In three points of
error, appellant contends that (1) the evidence was legally insufficient; (2) the
evidence was factually insufficient; and (3) the State improperly commented on
appellant’s failure to testify. We affirm. Background
          On February 16, 2006, Houston Police Department Narcotics officers obtained
a search warrant for the house located at 2801 Tierwester in Houston, Texas. 
According to police testimony, the search warrant described a black man of light
complexion between the ages of 25 and 28. The search warrant was issued for Nino
Johnson, a relative of appellant. When police executed the warrant, however,
appellant was the sole occupant of the house. Police discovered 65.1 grams of
cocaine in the house. 
          Officer Baccus testified at trial that the house was located in an area known for
narcotics deliveries. He described the house as a small, wood-frame dwelling with
a burglar door and screen mesh covering the front door. Officer Baccus further
testified that the burglar door was locked from the inside and that the main entry door
was open prior to the raid. Officer Baccus stated that, when the narcotics raid team
forced open the burglar door with a pry tool, they observed an individual inside the
house look out of a room and then go back inside the room after seeing police at the
front door. Officer Olivarez testified that the individual , later identified as appellant,
appeared surprised upon seeing the police and ran back into the room. 
          In the bedroom where the officers saw appellant, they found a plastic container
containing a white substance (later identified as cocaine), along with a loaded
revolver and some ammunition, all in plain view. Officers also saw a scale, a plate
holding two knives, and more of what was later identified as cocaine. Police also
found powder cocaine in small baggies. Officer Baccus testified that the small
baggies in which the powder cocaine was found were similar to those normally used
for drug distribution. In the back room of the house were a shotgun and a .22-caliber
rifle. Officers found another 27.2 grams of cocaine in the living room. Investigators
did not attempt to take fingerprint impressions from any of the cocaine containers.          Appellant was found in possession of $718 at the time of his arrest. The bills
were listed as 17 twenty-, 17 ten-, 36 five-, and 28 one- dollar bills. Officer Baccus
testified that it was common to see drug dealers with multiple bills in small amounts. 
Appellant told Officer Baccus at the scene that the money was not his. 
          At trial, appellant’s counsel raised the possibility that appellant was legally
blind. When cross-examining Officer Olivarez, appellant’s counsel asked if he was
“aware of the fact that [appellant] had any blindness.” Officer Baccus testified,
however, that appellant did not seem to be impaired visually because appellant moved
about normally and did not use a cane, walker, or dark glasses at the time of his arrest. 
In addition, Officer Baccus testified that appellant appeared to be “watching” the
police officers during the search of the house and his subsequent arrest. 
Notwithstanding the officers’ testimony, appellants’ counsel contended in her closing
argument that appellant was legally blind and that was the reason officers saw him
return to the room in which officers later found the cocaine. In addition, appellant’s
counsel raised the possibility that at least one other person could have been in the
house at the time the officers arrived.
          During his closing argument, the prosecutor addressed the possibility that
another person may have been in the house but escaped arrest by making the
following statement: 
And don’t you know if there was a missing man, Mr.
Johnson would have told his attorney who it was and they
could have provided him in court today? Appellant’s counsel did not object to this statement.
Sufficiency of the Evidence
          In his first and second points of error, appellant contends that the evidence was
legally and factually insufficient to establish that he was knowingly in possession of
cocaine.
Standard of Review 
          In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found
the crime’s essential elements beyond a reasonable doubt. Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000). In our factual-sufficiency review, we view all
of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim.
App. 1997). We will set aside the verdict only if (1) the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or (2) the proof of guilt is against the
great weight and preponderance of the evidence. Johnson, 23 S.W.3d at 11. Under
the first prong of Johnson, we cannot conclude that a conviction is “clearly wrong”
or “manifestly unjust” simply because, on the quantum of evidence admitted, we
would have voted to acquit had we been on the jury. Watson v. State, 204 S.W.3d
404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson, we also
cannot declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury’s resolution of that conflict. Id. Before finding that evidence
is factually insufficient to support a verdict under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury’s verdict. Id. 
          In our factual-sufficiency review, we must also discuss the evidence that,
according to appellant, most undermines the jury’s verdict. Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003). The fact-finder alone determines the weight to be
given contradictory testimonial evidence because the determination depends on the
fact-finder’s evaluation of credibility and demeanor. Cain, 958 S.W.2d at 408–09. 
As the determiner of the credibility of the witnesses, the fact-finder may choose to
believe all, some, or none of the testimony presented. Id. at 407 n.5; see also Lancon
v. State, 253 S.W.3d 699, 705–07 (Tex. Crim. App. 2008).
Legal Sufficiency Analysis
          To convict appellant of possession of a controlled substance with the intent to
deliver, the jury had to find that appellant intentionally or knowingly exercised actual
care, custody, control, or management over the substance and that he knew the matter
possessed was contraband. Tex. Health & Safety Code Ann. §§ 481.002, 481.115
(Vernon 2005). Here, appellant argues that he was not in exclusive possession of the
cocaine because he was merely visiting the house in which he was arrested. 
          When the contraband is not found on the accused’s person or it is not in the
exclusive possession of the accused, additional independent facts and circumstances
must link him to the knowing possession of the contraband. Roberson v. State, 80
S.W.3d 730, 735 Tex. App—Houston [1st Dist.] 2002, pet. ref’d). This requirement
of additional facts is “designed to protect the innocent bystander from conviction
based solely upon his fortuitous proximity to someone else’s drugs.” Poindexter v.
State, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005). “This rule simply restates
the common-sense notion that a person—such as a father, son, spouse, roommate, or
friend—may jointly possess property like a house but not necessarily jointly possess
the contraband found in that house.” Id. There is no established or set formula of
factors that would dictate a finding of a link to support a reasonable inference of
knowing possession of contraband. Wingfield v. State, 197 S.W.3d 922, 928 (Tex.
App.—Dallas 2006, no pet.) (citing Porter v. State, 873 S.W.2d 729, 732 (Tex.
App.—Dallas 1994, pet. ref’d)). It is the “logical force” or degree of the factors, not
the number of factors present, that tend to affirmatively link the defendant to the
contraband. Id. (citing Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.—Dallas
2003, no pet.)). The Court of Criminal Appeals has identified several factors that
may help to establish a link between a defendant and the contraband, including
whether (1) the contraband was in plain view; (2) the contraband was conveniently
accessible to the accused; (3) the accused was the owner of the place where the
contraband was found; (4) the place where the contraband was found was enclosed; 
(5) paraphernalia to use the contraband was found in view of or on the accused; and
(6) conduct by the accused indicated a consciousness of guilt. Cole v. State, 194
S.W.3d 538, 548–49 (Tex. App—Houston [1st Dist.] 2006, pet. ref’d (citing Gilbert
v. State, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d)). 
Courts have also considered whether traces of the contraband or a large sum of money
were found on the accused; the amount of contraband found; whether the accused
attempted to flee; and whether the accused was observed in a suspicious area under
suspicious circumstances. Id. (citing Whitworth v. State, 808 S.W.2d 566, 569 (Tex.
App.—Austin 1991, pet. ref’d); Roberson, 80 S.W.3d at 740–42; Chavez v. State, 769
S.W.2d 284, 288-89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref’d); Lassaint v.
State, 79 S.W.3d 736, 741 (Tex. App.—Corpus Christi 2002, no pet.)). 
          In this case, several links support a finding that appellant knowingly possessed
cocaine: (1) cocaine was found in plain view on a plate and along the floor in one of
the bedrooms of the house; (2) appellant was found with a large amount of cash in
multiple small bills at the time of his arrest, and Officer Baccus testified that it was
common for drug dealers to carry large amounts of cash in small bills; (3) the cocaine
was conveniently accessible to appellant, as it was on the pool table and along the
floor in the bedroom into which appellant was seen going at the time of the raid; (4)
Officer Oliveraz testified that appellant appeared surprised upon noticing that the
police were at the front door and ran back into the room where the cocaine was found,
thus indicating a consciousness of guilt; (5) the quantity of the cocaine was
significant; (6) appellant was the sole occupant in the house at the time of the raid;
and (7) he was found in the presence of two knives, a loaded revolver, a shotgun, .22-caliber rifle, and ammunition—weapons that are typically used by sellers of narcotics.
 Based upon the logical force of these facts and circumstances, we find that the jury
could have made further reasonable inferences that appellant knowingly possessed
a controlled substance with the intent to deliver. Cole, 194 S.W.3d at 548–49 (Tex.
App.—Houston [1st Dist.] 2006 (citing Gilbert, 874 at 298).
          Viewing the evidence in the light most favorable to the verdict, we hold that
a rational trier of fact could have found the crime’s essential elements beyond a
reasonable doubt. Johnson, 23 S.W.3d at 7. We overrule appellant’s first point of
error. 
Factual Sufficiency Analysis
          In his second point of error, appellant contends that the evidence is factually
insufficient to support his conviction.  Appellant argues that he was neither the person
whom the police expected to find in the house nor the individual described in the
search warrant. Therefore, appellant contends, he was merely in the vicinity of a
controlled substance, which does not by itself support a finding that a person is a
party to an offense. Appellant also contends that the controlled substance was not in
his control because he was never seen touching, handling, or even looking at the
cocaine. However, as noted previously, our analysis of whether the evidence linked
appellant to the cocaine does not require a showing that appellant was seen handling
or looking at the cocaine. Instead, we simply examine the logical force of the links
that are present. Wingfield, 197 S.W.3d at 928 (citing Taylor, 106 S.W.3d at 831). 
Among the many facts linking appellant to the cocaine found in the house are the
following: (1) cocaine was found in plain view on a plate and along the floor in one
of the bedrooms of the house; (2) appellant was found with a large amount of cash in
multiple small bills at the time of his arrest, and Officer Baccus testified that it was
common for drug dealers to carry large amounts of cash in small bills; (3) the cocaine
was conveniently accessible to appellant, as it was on the pool table and along the
floor in the bedroom into which appellant was seen going at the time of the raid; (4)
Officer Oliveraz testified that appellant appeared surprised upon noticing that the
police were at the front door and ran back into the room where the cocaine was found,
thus indicating a consciousness of guilt; (5) the quantity of the cocaine was
significant; (6) appellant was the sole occupant in the house at the time of the raid;
and (7) he was found in the presence of two knives, a loaded revolver, a shotgun, .22-caliber rifle, and ammunition, which are weapons that could be used by sellers of
narcotics. 
          We note that appellant’s brief appears to imply that he is legally blind and
therefore could not have known he was in the vicinity of contraband. However,
appellant did not introduce any evidence of blindness. On the other hand, Officer
Oliveraz testified that appellant appeared surprised upon noticing that the police were
at the front door of the house and then ran back into the room where cocaine was
discovered. In addition, Officer Baccus testified that appellant did not seem to be
impaired visually at the time of his arrest because appellant moved about normally
and did not use a cane, walker, or glasses. 
          Viewing the evidence in a neutral light, we conclude that the evidence is not
so weak that the verdict is clearly wrong and manifestly unjust, and the proof of guilt
is not against the great weight and preponderance of the evidence. Johnson, 23
S.W.3d at 11. We overrule appellant’s second point of error. 
                              Prosecutor’s Comment in Closing Argument
          In his third point of error, appellant contends that the State, in its closing
argument, improperly commented on his exercise of his right to remain silent. The
statement to which appellant objects, however, is merely a comment on appellant’s
failure to produce evidence that anyone else was in the house prior to or during the
raid. Because appellant did not object to the statement at the time it was made,
appellant has failed to preserve this point for our review. Tex. R. App. P. 33.1. We
overrule appellant’s third point of error. 
Conclusion
          We affirm the trial court’s judgment.
 

                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Alcala and Hanks. 

Do not publish. Tex. R. App. P. 47.2(b).